MARK E. FERRARIO (Bar No. 1625)
ferrariom@gtlaw.com
JACOB D. BUNDICK (Bar No. 9772)
bundickj@gtlaw.com
JENNIFER GRAY
jennifer.gray@gtlaw.com
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone:   (702) 792-3773
Facsimile:    (702) 792-9002

*Counsel for Defendants Green Tree
Servicing, LLC and Fannie Mae*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| CRYSTAL TORNO (a.k.a. CRYSTAL A. THOMAS-BOLDUC), an individual,<br><br>Plaintiff<br><br>vs.<br><br>GREEN TREE SERVICING, LLC; NATIONAL DEFAULT SERVICING CORPORATION; and PREMIER AMERICAN TITLE AGENCY, INC., FANNIE MAE; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:15-cv-01018-APG-PAL<br><br>**DEFENDANT GREEN TREE SERVICING, LLC AND FANNIE MAE'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)**<br><br>Clark County District Court Case No. A-13-689111-C |

In their Motion for Judgment on the Pleadings (Dkt. 21, "MJOP"), Defendants Green Tree Loan Servicing LLC, now known as Ditech Financial LLC ("Green Tree"), and the Federal National Mortgage Association ("Fannie Mae") established that they are entitled to judgment on multiple grounds. Plaintiff's Opposition (Dkt. 29, "Opp'n") refutes none of their arguments.

1

First, Defendants established that the Second Amended Complaint ("SAC") fails to state a claim under Nevada Revised Statutes section ("NRS") 107.080(7) because there is no underlying violation of section 107.080(2)(c). Green Tree's Affidavit of Authority under NRS 107.080(2)(c) accurately and truthfully represented that it was the beneficiary of record of the Torno Deed of Trust ("DOT") and holder of the note ("Note"). The Opposition raises a variety of arguments that all suffer from the same fatal flaw as the SAC itself—Torno conflates Fannie Mae's role as the investor or beneficial owner of her loan with Green Tree's status as the beneficiary under the DOT. The last recorded assignment of the DOT prior to Green Tree's execution of the Affidavit of Authority assigned the DOT from MERS to Green Tree. Accordingly, Green Tree's status as the record beneficiary on the relevant date is a matter of public record. None of Torno's various arguments refute this fact.

Likewise, Defendants established, and the Opposition fails to refute, that Green Tree was the holder of the note on the relevant date. When MERS transferred the DOT to Green Tree, it also expressly transferred the underlying interest in the Note. Further, Nevada follows the Restatement (Third) of Property, which recognizes that a transfer of either a note or deed of trust effects a transfer of the other to the same party, absent an affirmative intent to split the two. Given the express language in the assignment, MERS's transfer of the DOT also transferred the Note to Green Tree. Additionally, Fannie Mae transferred constructive possession of the Torno Note immediately upon Torno's default. Finally, it is noteworthy that the foreclosure mediator certified the parties' mediation, which he could not have done unless Green Tree produced documents demonstrating its authority to foreclose at the mediation. Plaintiff did not seek review of the mediation. The Opposition fails to address, much less refute, any of these arguments on their merits.

Torno has simply created allegations seeking to contradict the irrefutable content of public records, which show that the Affidavit correctly identified the beneficiary of record, and the applicable law. Such implausible contentions are legally insufficient to survive the MJOP.

In addition to conclusively demonstrating Torno's core allegation that Green Tree's Affidavit was false, judicially noticeable publicly recorded documents also establish that Torno

lacks standing, as a matter of law, under NRS 107.080(7), because her foreclosure has already occurred. NRS 107.080(7) permits a court to enjoin a foreclosure sale pending compliance with NRS 107.080(2)(c), but it does not include any remedy for completed foreclosures. Accordingly, NRS 107.080(7) does not apply to Plaintiff.

Moreover, the Opposition fails to show that Fannie Mae could be subject to any claim under NRS 107.080 generally because the statute does not impose duties on investors, such as Fannie Mae, and in any event, the SAC does not allege any improper conduct by Fannie Mae.

## ARGUMENT

### I. THE SAC FAILS TO STATE A CLAIM UNDER NRS § 107.080(7) BECAUSE THERE WAS NO UNDERLYING VIOLATION OF NRS § 107.080(2)(C)(1).

NRS 107.080(2)(c)(1) requires that, before a trustee can exercise the power of sale under a deed of trust, the beneficiary under the deed of trust or the trustee must execute and record a notice of default and election to sell the property, along with a supporting affidavit of authority identifying, among other things:

> the trustee or the trustee's personal representative or assignee, the current holder of the note secured by the deed of trust, the current beneficiary of record and the servicers of the obligation or debt secured by the deed of trust ….

NRS § 107.080(2)(c)(1) (effective October 1, 2011 to May 31, 2013). Torno contends that the Affidavit attached to her Notice of Default wrongly identifies Green Tree as both the beneficiary of record under the DOT and the holder of the Note as of the date it was executed and recorded. However, the SAC contains no facts establishing that the Affidavit was false, and the publicly recorded property records prove that the Affidavit was, in fact, true and correct. The Opposition cannot refute these uncontestable facts.

### A. THE AFFIDAVIT CORRECTLY IDENTIFIED GREEN TREE AS THE BENEFICIARY OF RECORD UNDER THE DEED OF TRUST.

Green Tree's Affidavit accurately identified it as the beneficiary under the Torno DOT because the last assignment recorded prior to the Affidavit was an assignment from MERS to Green Tree. *See* RJN Ex. 1, at 11, ¶ 20. MERS executed the assignment on July 11, 2012 and recorded it on July 25, 2012. RJN Ex. 3. No additional assignments were recorded prior to

2

1  January 8, 2013, when Green Tree executed the Affidavit.  Consequently, Green Tree's
2  representation that it was the current beneficiary of record was true and accurate.

3  Although Green Tree's status as beneficiary of record is unassailable, Torno insists that
4  Green Tree should have identified Fannie Mae on the Affidavit as the "current beneficiary of
5  record" because "Fannie Mae was the "actual" beneficiary." (Opp'n at 9).  The fatal flaw in
6  Torno's argument is readily apparent.  NRS 107.080(2) requires disclosure of the "beneficiary of
7  record," because it is a purely objective designation clear to all parties, not what a plaintiff might
8  self-servingly deem an "actual beneficiary" (and which Torno fails to even define).  Torno devotes
9  pages upon pages attempting to prove that Fannie Mae is an "actual beneficiary," but to no end.
10 None of Torno's arguments can make Fannie Mae the beneficiary of record or change the text of
11 NRS 107.080(2) to require disclosure of the investor, or in Torno's words "actual beneficiary" of
12 a loan.[1]

13 For example, Torno paradoxically insists that the Affidavit should have identified Fannie
14 Mae as the beneficiary of record on the basis of an unrecorded assignment.  Torno further insists
15 that Green Tree was somehow statutorily required to record that assignment at the minute it was
16 drafted – regardless of the parties' intent or purpose – and that had Green Tree done so, Fannie
17 Mae would have been the beneficiary of record at the time.  This convoluted argument fails at
18 every level and contravenes the essential purpose of NRS 107.080(2)(c), which is to ensure that
19 the party exercising the power of sale has the current legal authority to do so.

20 As an initial matter, the unrecorded assignment to Fannie Mae was not effective upon its
21 drafting.  An assignment is effective when the parties intend for it to be effective.  "'It is essential

---

[1] The case of *Chandler v. Indymac Bank, F.S.B.*, No. 3:10–cv–0769–LRH–RAM, 2011 WL 1792772, at *2 (D. Nev. May 11, 2011) illustrates the illogic in Torno's position.  The Court observed that only the beneficiary of record can record a notice of default or exercise the power of sale.  In fact, "it is a statutory defect in a non-judicial foreclosure for an entity that is not yet the beneficiary, trustee, or an agent of one of these entities to record the notice of default." *Id.*; *see also Price v. Soma Fin.*, No. 3:11-906-RCJ-VPC, 2012 WL 3206544, at *4 (D. Nev. Aug. 3, 2012) (same).  Thus, because Fannie Mae was not the beneficiary of record, it could *not* have filed the Notice of Default nor exercised the power of sale.  Only Green Tree was legally able to take those steps.  The purpose of the Affidavit it to ensure that the party who is taking these steps towards foreclosure is authorized to do so.  That entity was Green Tree.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway –
Suite 400 North

to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee.'" *Easton Bus. Opportunities v. Town Exec. Suites*, 230 P.3d 827, 832 (Nev. 2010) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 324 (1981)); *see also J. Christopher Stuhmer, Inc. v. Centaur Sculpture Galleries, Ltd., Inc.*, 871 P.2d 327, 331 (Nev. 1994) (finding no assignment where there was a lack of evidence of a manifestation of intent to transfer).[2] The SAC alleges no facts related to the intent of Green Tree and Fannie Mae to enforce the unrecorded deed.

In any event, the "effectiveness" of an unrecorded deed from Green Tree to Fannie Mae is a red-herring and has no bearing on this case because Green Tree was *in fact* the beneficiary of record when it executed the Affidavit. NRS 106.210 does not change this fact, and it does not somehow convert the unrecorded assignment into a recorded. Indeed, neither NRS 106.210 or under Nevada law generally requires that parties record an assignment where there is no present intent to enforce the assignment against third-parties (and Torno does not contend that any party

---

[2] The case of *1597 Ashfield Valley Trust v. Fed. Nat. Mortgage Ass'n Sys.*, No. 2:14-CV-2123 JCM, 2015 WL 4581220, at *8 (D. Nev. July 28, 2015) does not contradict that the effectiveness of an assignment is determined by the parties intent. There was no dispute as to intent in this case, so the Court did not address it. In this case, Fannie Mae and its conservator, the FHFA, challenged a super-priority lien foreclosure under the supremacy clause and a federal statute requiring the FHFA's consent before property subject to an FHFA conservatorship could be foreclosed upon. *Id.* at *6-7. The issue before the court was whether Fannie Mae held any "property interest" in the security at the time of the HOA foreclosure. *Id.* The deed of trust had been assigned to Fannie Mae just prior to the HOA foreclosure, but not recorded until shortly after the foreclosure. *Id.* at *8. The court was called upon to determine when Fannie Mae had obtained its interest in the property, before or after the foreclosure. As between these two time-frames, the Court concluded that Fannie Mae obtained its interest when the assignment was executed, rather than when it was recorded. There was no question as to *whether t*he parties to the assignment intended the assignment to be effective. After all, the assignment was in fact recorded shortly after it was executed (unlike this case). Fannie Mae obtained a property interest when it executed the assignment in *Ashfield* not because of the naked fact of execution, but because the parties intended to transfer the interest at the time of the execution (no party disputed that fact). Unlike *Ashfield*, this case does not involve the effective date of a transfer as between two parties. Rather, Torno's claim hinges on what entity was the beneficiary of record under the deed of trust on a particular date, which was not at issue in *Ashfield*. The *Ashfield* Court did *not* hold that Fannie Mae became the *beneficiary of record* when the assignment. Fannie Mae would have acquired that status when the assignment was recorded. Likewise, in the present case, Fannie Mae did *not* become the *beneficiary of record* when the unrecorded assignment was created, as Torno seems to suggest. *Ashfield* is consistent with Defendant's position, not Torno's.

LV 420585004v12

attempted to enforce the unrecorded assignment against it). *See e.g.*, NRS § 111.315 (any conveyance of real property, ... to operate as notice to third persons, shall be recorded in the office of the recorder of the county in which the real property is situated ...but shall be valid and binding between the parties thereto without such record); NRS § 111.325 ("Every conveyance of real property within this State ..., which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, ..."). S*ee also Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 259 (Nev. 2012) ("In Nevada, the purpose of recording a beneficial interest under a deed of trust is to provide 'constructive notice . . . to all persons.'") (quoting NRS § 106.210). In short, there is nothing in Nevada's property laws that makes Fannie Mae the beneficiary of record on the basis of an unrecorded assignment. (In fact, such a hold would wreak havoc on Nevada's property laws).

Torno's next two arguments are also unavailing and prove nothing more than the fact that, as Defendants have always maintained, Fannie Mae was the investor in the Torno loan, but not the beneficiary of record. First, Torno maintains that Fannie Mae's submission of a "credit bid" demonstrates that Fannie Mae, not Green Tree, was the beneficiary of the DOT. Yet, one has nothing to do with the other. The fact that the foreclosure trustee acknowledged Fannie Mae as the loan investor and accepted a credit bid on Fannie Mae's behalf does not change the fact that Green Tree was the beneficiary of record under the DOT when it executed the Affidavit.

Equally meritless is Torno's next claim that Fannie Mae's rejection of Torno's short sale offer in July 2013 means that Fannie Mae was the beneficiary of record. As the investor, Fannie Mae was the party that would ultimately receive the proceeds of the loan. Therefore, Fannie Mae was entitled to require Green Tree to submit short sale or other loss mitigation offers to it for approval. This arrangement does not contradict Green Tree's status as the beneficiary under the DOT. Finally, Torno argues that Defendants' alleged "admission" that Fannie Mae was the beneficiary of the DOT in the Joint Answer to the First Amended Complaint in January 2014

LV 420585004v12

makes it so. It does not. The beneficiary of record as of a given date is determined according to the documents recorded in the county recorder's office, not by an alleged admission in discovery.[3]

The bottom line is Torno is trying to manipulate the plain meaning of NRS 107.080's requirement of identifying the "beneficiary of record," and such manipulation should be rejected.[4]

### B. THE AFFIDAVIT CORRECTLY IDENTIFIED GREEN TREE AS THE HOLDER OF THE NOTE.

The Affidavit was also accurate with respect to Green Tree's identification of itself as the holder of the Torno Note. This was the case for several reasons. First, consistent with Nevada law, the transfer of the DOT also effected a transfer of the Note. *See* RESTATEMENT (THIRD) OF PROP.: MORTG. § 5.4(b) (1997) ("Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise."). The Restatement is consistent with the express language in the assignment to Green Tree in which MERS expressly transferred "all interests secured [by the DOT]." (RJN Ex. 3).

Plaintiff counters that the "'designation of [beneficiary of the DOT] does not make [Green Tree] the holder of the note.' ... [because] a 'holder' must have actual (i.e. physical) possession of

---

[3] Further, this purported admission was provided in connection with a now defunct, superseded pleading. That pleading became moot as a matter of law once Plaintiff filed the Second Amended Complaint in this case. *See Associated Aviation Underwriters, Inc. v. Vegas Jet, L.L.C.*, 106 F. Supp. 2d 1051, 1054 (D. Nev. 2000) ("In Nevada, an amended complaint generally supersedes the original complaint and renders it nugatory."); *Morgan v. Savage*, 281 P.3d 1203, 1203 (Nev. 2009) ("An amended complaint is a complete pleading which entirely supersedes the original complaint.") (citing *Randono v. Ballow*, 676 P.2d 807, 808 (Nev. 1984)); *Randono*, 676 P.2d at 808 (agreeing that where a complaint is amended in a material way, the answer to that complaint constitutes the first responsive pleading in the case, even though defendant responded to the original complaint) (citing *Campbell v. Deddens*, 518 P.2d 1012 (1974)).

[4] *See also In re Engle Progeny Cases Tobacco Litig.*, Case No. 08-CA-80000, at 1 (Fla. Cir. Ct. May 8, 2008) (Levins, J.) (rejecting "an overly interpretative analysis ....[of the] plain language" of a Florida Supreme Court opinion) (footnote omitted). Judge Levins emphasized the danger in changing the plain meaning: "'***The basic tool for the manipulation of reality is the manipulation of words. If you can control the meaning of words, you can control the people who must use the words.***'" *Id.* (quoting Philip K. Dick, How to Build a Universe That Doesn't Fall Apart Two Days Later (1978); emphasis in original). A copy of the *In re Engle Progeny Cases Tobacco Litigation* opinion is publicly available at http://www.fljud13.org/Portals/0/Forms/pdfs/genciv/OrdEfctEnglePhaseIfindPendCase.pdf.

LV 420585004v12

the note." (Opp'n at 14). But, this misses the point. MERS's transfer of the DOT, "all interests secured [by the DOT], to Green Tree is sufficient under Nevada law to transfer the Note to Green Tree for purposes of acquiring holder status. *Edelstein*, cited by Torno, supports Green Tree's status as the holder of the Note. There, the Nevada Supreme Court held that where there is no express agreement to have a different note holder and deed of trust beneficiary, "a promissory note and a deed of trust **are *automatically transferred together***." 286 P.3d at 257 (citing RESTATEMENT (THIRD) OF PROP.: MORTG. § 5.4(a) (1997)) (emphasis added).[5] In *Edelstein*, the Court held that there was no intent to split the note (which had previously been split and reunified) when MERS transferred its interest to BNY Mellon, in part because MERS' assignment stated that it transferred its interest in the deed of trust "'[t]ogether with the note or notes therein ...' to BNY Mellon." *Id.* at 260-61. This case mirrors *Edelstein*. Thus, the 2012 Assignment of the DOT to Green Tree also conveyed the Note.

Defendants' opening brief offered an alternative basis for Green Tree's holder status. NRS 107.080(2)(c) contemplates that that holder status may be acquired through constructive possession. The Fannie Mae Servicing Guidelines, which form part of the overall agreement between Fannie Mae and its servicing agents, and are judicially noticeable, provide that Fannie Mae automatically transfers possession of a Note to its servicer upon a borrower's default. Therefore, constructive possession of the Torno Note transferred from Fannie Mae to Green Tree immediately upon Plaintiff's default. *See* RJN Ex. 19, at 84 (Fannie Mae Servicing Guide, § A2-1-04, Note Holder Status for Legal Proceedings Conducted in the Servicer's Name (Nov. 12, 2014)). Green Tree's constructive possession of the Note is sufficient to convey holder status. *See In re Phillips*, 491 B.R. 255, 262-63 (Bankr. D. Nev. 2013) (holding that constructive possession through an agent "render[s] Fannie Mae the Note's holder and a person entitled to enforce the Note").

---

[5] *See also Medina v. Quality Loan Serv. Corp.*, No. 12–CV–00428–KJD–PAL, 2012 WL 5334651, at *4 (D. Nev. Oct. 25, 2012) (assignment of deed of trust stating that the assignor "'does convey, grant, sell, assign, transfer and set over the described deed of trust together with the certain note(s) described therein'" resulted in a transfer of the note) (citation omitted).

LV 420585004v12

The Opposition's only response to these arguments is to challenge Defendants' Request for Judicial Notice of the Fannie Mae materials, even though they easily meet the standard for judicial notice. Torno disingenuously disputes the "authenticity" of the Servicing Guide and claims that "there is no evidence that either the Servicing Guide or the May 23 Announcement apply to this matter." (Opp'n at 15). Torno's challenges are without merit and should be rejected.

First, Torno's challenge to authenticity fails because a court may take judicial notice of "a[ny] fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* FED. R. EVID. 201 (emphasis added). The Fannie Mae Guidelines are readily available on the Fannie Mae website, and thus can readily be determined from sources whose accuracy cannot reasonably be questioned. [6] Further, Fannie Mae is a government-operated instrumentality subject to FHFA control and oversight.[7] Courts routinely take judicial notice of government materials because their accuracy cannot *reasonably* be questioned.[8] Torno cannot seriously or reasonably challenge the

---

[6] Plaintiff's objection to the Court taking judicial notice of Fannie Mae's Servicing Guidelines, seems to be that the Servicing Guidelines on its website are dated November 12, 2014, which is after the Affidavit of Authority. (Opp'n at 14.) However, Defendants also provided Fannie Mae's Announcement 08-12, May 23, 2008 (RJN Ex. 20), which is also judicially noticeable, and shows that the provision that Fannie Mae automatically transfers possession of a note to its servicers in this context has been in place since 2008. Defendants have not identified any intervening Fannie Mae Announcements that changed the contents of this section from the time of its promulgation in 2008 through the present. Nor can they.

[7] "In July of 2008, Congress passed the Housing and Economic Recovery Act of 2008 ('HERA'), Pub. L. No. 110–289, 122 Stat. 2654, codified at 12 U.S.C. § 4511 *et seq.*, which established the Federal Housing Finance Agency ("FHFA") for the purpose of regulating Fannie Mae, Freddie Mac and the twelve Federal Home Loan Banks. In September of 2008, FHFA placed Fannie Mae and Freddie Mac into conservatorships 'for the purpose of reorganizing, rehabilitating, or winding up [their] affairs.' 12 U.S.C. § 4617(a)(2). As conservator, FHFA immediately succeeded to 'all rights, titles, powers, and privileges' of Fannie Mae and Freddie Mac. 12 U.S.C. § 4617(b)(2)(A)(i)." *Skylights LLC v. Byron*, No. 2:15–cv–00043–GMN–VCF, 2015 WL 3887061, at *2 (D. Nev. June 24, 2015).

[8] *See United States ex rel. Adams v. Aurora Loan Servs. LLC*, No. 2:11-cv-00535-RCJ-PAL, 2013 WL 10856612 (D. Nev. Aug. 12, 2013) (Fannie Mae, Freddie Mac, and related FHFA materials were "properly before the Court as agency records subject to judicial notice"); *Alvara v. Aurora Loan Servs., Inc.*, No. C-09-1512 SC, 2009 WL 1689640, at *1 n.3 (N.D. Cal. June 16, 2009) (taking judicial notice of a chart posted on the Fannie Mae website because the information was neither disputed nor reasonably questioned); *Melegrito v. CitiMortg. Inc.*, No. C 11-01765 LB, 2011 WL 2197534, at *1 n.3 (N.D. Cal. June 6, 2011) (taking judicial notice of Fannie Mae "Historical Conventional Loan Limits" because 'the information contained therein is capable of

Greenberg Traurig, LLP
3773 Howard Hughes Parkway –
Suite 400 North

authenticity of the Fannie Mae Guidelines. *See, e.g., Wray v. CitiMortg., Inc.*, 2013 WL 1156072 (D.S.C.) (rejecting Plaintiff's objection to Fannie Mae's servicing guidelines as being "of questionable propriety").

Likewise, Torno cannot reasonably dispute the applicability of the Guidelines in this case nor claim that any intrinsic evidence is required to determine their relevance. The SAC specifically alleges that Green Tree serviced her loan on behalf of Fannie Mae. *See* SAC ¶¶ 13-15. The Fannie Mae Servicing Guidelines state that they are incorporated into every agreement with Fannie Mae to service loans that it owns. *See* RJN Ex. 19, at 6 (Fannie Mae Servicing Guide, § A1-1-03, Nature of the Contractual Relationship (Nov. 12, 2014)), explaining that the "Lender Contract," defining the obligations of its sellers and servicers incorporates "the Servicing Guide, the Servicing Guide Procedures . . . any supplemental servicing instructions or directives provided by Fannie Mae; any Announcements, Lender Letters, Notices, release notes, and information posted on Fannie Mae's website that is incorporated by reference into the Selling or Servicing Guide; ... [and] all such items as amended, modified, restated, or supplemented from time to time."). Because the Guidelines are incorporated into every Lender Contract, they necessarily apply in this case.

Moreover, courts routinely refer to Fannie Mae guidelines and publications at the pleading stage without requiring any additional "extrinsic evidence," and Torno even relies on a Fannie Mae website as a source of information in this case. *See, e.g.* Opp'n at 14 (discussing and relying on Fannie Mae's "KnowYourOptions" website regarding the Home Affordable Refinance Program ("HARP").[9] Accordingly, the Fannie Guidelines show that Green Tree was a holder based upon its constructive possession of the Note.

---

'accurate and ready determination by resort to sources whose accuracy cannot *reasonably be questioned.*'"). *See also* authorities cited in MJOP at 12, n.12.

[9] Plaintiff contends that "if the Court considers the Servicing Guide or May 23 Announcement, the Motion for Judgment on the Pleadings should be converted into a Motion for Summary Judgment." (Opp'n at 16). First, the Court should not convert the MJOP to a summary judgment motion if the Servicing Guide and/or May 23 Announcement are considered. Because they are judicially noticeable, they are appropriate for consideration in ruling on the MJOP. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999) ("When considering a motion for judgment on the pleadings, this court may consider facts that 'are

9

LV 420585004v12

## II. PLAINTIFF LACKS STANDING TO ASSERT A CLAIM UNDER NRS § 107.080(7).

Defendants established that Torno lacks standing to assert a claim under NRS 107.080(7) because her foreclosure is completed and NRS 107.080(7) does not provide a remedy to borrowers who have already lost title to their homes through foreclosure. Moreover, Plaintiff fails to meet the statutory language of NRS 107.080(7) because she is no longer either a "grantor" or the "person who holds title of record" in light of the completed foreclosure. *See* RJN Ex. 8 (Trustee Deed of Sale); *see also Callahan v. First Commercial Title, Inc.,* 596 P.2d 236, 442 (Nev. 1979) (explaining that a deed of trust is extinguished "by sale of the property at foreclosure"). Plaintiff's arguments in response fail to refute her lack of standing.

In response, Plaintiff asserts that Defendants' standing argument goes to the merits of the claim and therefore is not a basis for dismissal. Not so. There are two types of standing inquiries: constitutional (Article III) standing and prudential standing. The whole concept of prudential standing (as opposed to Article III standing) deals with who comes within the scope of the protection afforded by a statute. *See Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n,* 457 F.3d 941, 950 (9th Cir. 2006) (explaining that the inquiry for "whether the plaintiff meets . . . prudential standing requirements . . . is 'whether a particular plaintiff has been granted a right to sue by the statute under which he or she brings suit'") (quoting *City of Sausalito v. O'Neill,* 386 F.3d 1186, 1199 (9th Cir. 2004)). NRS 107.080(7) is intended to benefit borrowers who are at risk of being subjected to improper non-judicial foreclosure under certain provisions of NRS 107.080 (including NRS 107.080(2)(c), and provide them with a way to remedy those defects before it is too late). Torno does not fall within the scope of the parties protected under NRS 107.080(7) because her foreclosure already took place. Therefore she lacks prudential standing.

---

contained in materials of which the court may take judicial notice.'") (quoting *Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir. 1994)). Second, even if this Court does not take judicial notice of these two documents, there is no need to consider the MJOP a summary judgment motion. The language in the servicing guide is merely a supplemental argument as to why Green Tree is the holder of the Note. As shown in the MJOP and herein, the grounds for judgment on the pleadings are well established with or without the servicing guidelines.

10

LV 420585004v12

Plaintiff's next assertion – that she has standing because NRS 107.080(7) provides an additional remedy to NRS 107.080(5) – does not make sense. Torno asserts a claim under NRS 107.080(7), which provides for a mandatory injunction against foreclosure upon a showing of non-compliance with NRS 107.080. Regardless of any other remedies that might be available under NRS 107.080, Torno lacks standing to assert the claim she has brought. Torno cannot, as she suggests, import remedies available under NRS 107.080(5)(b)-(c) into her NRS 107.080(7) claim. They are two different sections of Nevada's non-judicial foreclosure statute, each with its own requirements and limitations. Indeed, if a party could simply use NRS 107.080(7) to set aside a completed foreclosure, as Plaintiff suggests, there would be no need for NRS 107.080(5), and the strict limitations upon voiding completed foreclosures under that section[10] would be rendered meaningless. Moreover, Defendants have found no case law involving NRS 107.080(7) being used after a foreclosure sale. Simply put, a claim to void a foreclosure sale that has taken place is covered under NRS 107.080(5), and a claim based to prevent a sale that has not occurred is covered under NRS 107.080(7). Torno is not covered under the latter.

### III.   PLAINTIFF WAIVED ANY CLAIM RELATED TO THE MEDIATION.

In the MJOP, Defendants established that Plaintiff waived any claim based upon Green Tree's participation in Nevada's Foreclosure Mediation Program ("FMP"), by executing a Mediation Statement and Agreement. (MJOP at 16-17). Conceding the point, Plaintiff confirms that she is not basing any claim on a violation of NRS 108.086 regarding the FMP, and admits that her allegations regarding the mediation and statements made therein can only go to whether the Affidavit of Authority was false (*i.e.*, whether Green Tree was the beneficiary of record of the DOT and the holder of the Note). As explained above, Green Tree's status in this regard is not a

---

[10] *See, e.g., Tae-Si Kim v. Kearney*, 546 F. App'x 677, 678 (9th Cir. 2013) (affirming dismissal of section 107.080(5) claim because "[p]laintiffs failed to file their claim within the [then] required 90 day period [under a former version of the statute] as necessary to preserve their interest"); *Gale v. CitiMortg., Inc.*, No. 2:12–cv–02065–GMN–VCF, 2014 WL 4162258, at *5 (D. Nev. Aug. 20, 2014) ("[B]ecause Plaintiff did not record her lis pendens within 30 days of commencing this action, this Court is unable to declare the sale void [under N.R.S. 107.080(5)]" even though complaint was timely filed and lis pendens was recorded only 13 days late.); *see also* cases cited in the MJOP at 16, n.18.

LV 420585004v12

matter of a creative factual dispute based on what was said and not said at a mediation. Rather, as explained above, the public records, the express language of the assignment of the DOT to Green Tree (transferring "all interests secured thereby"), and controlling Nevada law all demonstrate that Green Tree was correctly identified as the DOT beneficiary and holder of the Note.[11]

### IV. FANNIE MAE SHOULD BE DISMISSED FOR THE INDEPENDENT REASON THAT IT HAS NO OBLIGATION UNDER NRS § 107.080(7).

In the MJOP, Defendants established that the claims against Fannie Mae should be dismissed for the additional reason that, as the loan investor, it has no obligations under NRS 107.080. (Opp'n at 17-18). To try to maintain a claim against Fannie Mae, Plaintiff first resorts to its flawed argument that Fannie Mae is the beneficiary for purposes of NRS 107.080(7). This fails for the reasons discussed in detail herein and in the MJOP.

Plaintiff then asserts Fannie Mae is now the successor-in-interest of the beneficiary (seemingly recognizing that it cannot avoid Green Tree's record beneficiary status). In actuality, however, after the foreclosure sale the beneficial interest under the DOT was extinguished as a matter of law. *See Callahan,* 596 P.2d at 442. Therefore, there was no successor to Green Tree's beneficial interest in the DOT, which was reflected in the public records until the foreclosure sale.

Finally, Plaintiff pivots to a new theory that Fannie Mae is liable because Green Tree was acting as its agent with respect to the loan. This also cannot save Plaintiff's claim. Plaintiff has not alleged that Green Tree in its role as beneficiary was Fannie Mae's "agent." Plaintiff also has not alleged any agency theory of liability with regard to Fannie Mae, and indeed Plaintiff cannot do so. NRS 107.080(7) provides only for liability for certain conduct by "the beneficiary, the

---

[11] Torno also fails to refute Defendants' showing that the Mediator's certification of the foreclosure mediation and issuance of a Mediation Certificate is conclusive proof that Green Tree had authority to foreclose. Because the mediator was prohibited under Nevada law from certifying the Plaintiff's foreclosure mediation unless Green Tree had failed to bring the original or a certified copy of the Note to the mediation, the Mediation Certificate establishes that Green Tree did possess the Note, and therefore was a "holder" during the relevant time period. (*See* MJOP at 14-15). Torno's only response is to inject a discussion of collateral judicial estoppel, which involves the preclusive effect of a court judgment in prior litigation and is not at issue here. (Opp'n at 22-23). The bottom line is that Plaintiff has not alleged that Green Tree did not bring the Note to the Mediation, nor any fact disputing that that the mediator certified that Green Tree had brought the Note to the mediation as required.

successor in interest of the beneficiary or the trustee." It does not provide for liability for the conduct of an agent, especially when, as here, the purported principal is not even one of the positions to which liability is limited (beneficiary, successor-in-interest to beneficiary and trustee). What Plaintiff cannot overcome is that agency is a *tort* based theory, not a means to extend specified and limited statutory liability. *See generally*, RESTATEMENT (THIRD) OF AGENCY § 7.03(1)-(2) (2006) ("A principal is subject to direct liability to a third party harmed by an agent's conduct when … the agent's conduct is *tortious*, or … would subject the principal to *tort* liability; … [a] principal is subject to vicarious liability to a third party harmed by an agent's conduct when … the agent is an employee who commits a *tort* while acting within the scope of employment[,] or … commits a *tort* when acting with apparent authority in dealing with a third party . . .") (emphasis added). If the Nevada legislature wanted NRS 107.080(7) to provide liability to a principal (who was not the record beneficiary) for an agent's conduct, it would have done so. It did not, and Plaintiff's theory cannot preclude judgment for Fannie Mae.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway –
Suite 400 North

LV 420585004v12

**CONCLUSION**

Based on the foregoing, Green Tree and Fannie Mae respectfully submit that Plaintiff has not provided any legitimate basis to refute the arguments made in the MJOP, and therefore Judgment on the Pleadings should be entered in favor of Green Tree and Fannie Mae for the reasons set forth in the Motion.

DATED: December 10, 2015          GREENBERG TRAURIG, LLP

By: */s/ Mark E. Ferrario*
MARK E. FERRARIO
Nevada Bar No. 1625
JACOB D. BUNDICK (Bar No. 9772)
bundickj@gtlaw.com
JENNIFER GRAY
grayjen@gtlaw.com
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
*Counsel for Defendants Green Tree Servicing, LLC and Fannie Mae*

14

LV 420585004v12

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2015, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

/s/ Sandy Jackson
an employee of Greenberg Traurig, LLP

15

LV 420585004v12