DENNIS L. KENNEDY
Nevada Bar No. 1462
JOSHUA M. DICKEY
Nevada Bar No. 6621
PAUL C. WILLIAMS
Nevada Bar No. 12524
AMANDA L. STEVENS
Nevada Bar No. 13966
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone:  702.562.8820
Facsimile:  702.562.8821
DKennedy@BaileyKennedy.com
JDickey@BaileyKennedy.com
PWilliams@BaileyKennedy.com
AStevens@BaileyKennedy.com

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiff Crystal Torno*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| CRYSTAL TORNO (a.k.a. CRYSTAL A. THOMAS-BOLDUC), an individual,<br><br>Plaintiff,<br><br>vs.<br><br>GREEN TREE SERVICING, LLC; NATIONAL DEFAULT SERVICING CORPORATION; FANNIE MAE; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  2:15-cv-01018-APG-PAL<br><br>**PLAINTIFF CRYSTAL TORNO'S RESPONSE TO DEFENDANTS GREEN TREE SERVICING, LLC'S AND FANNIE MAE'S MOTION TO STRIKE CLASS ALLEGATIONS AND NATIONAL DEFAULT SERVICING CORPORATION'S JOINDER THERETO [ECF NOS. 70, 71]** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

As this Court recently held, motions to strike class allegations "are ***generally disfavored*** because a motion for class certification is considered to be a more appropriate vehicle for arguments pertaining to the class allegations."[1]  Here, Defendants Green Tree Servicing ("Green Tree") and

---

[1] *See John v. Mazo*, No. 2:16-cv-00239-APG-PAL, 2016 WL 4497755, at *1 (D. Nev. Aug. 25, 2016) (emphasis added).

1 Federal National Mortgage Association's ("Fannie Mae") (jointly, "Defendants") Motion to Strike
2 Class Allegations (the "Motion to Strike") and Defendant National Default Servicing Corporation's
3 Joinder thereto should be denied as their contentions fail, and in any event, are better suited for a
4 response to a motion for class certification.

5     In any event, the issues addressed by Defendants in the Motion to Strike are entirely cured by
6 Plaintiff Crystal Torno's ("Ms. Torno") proposed Third Amended Complaint.[2] Under the new class
7 definitions set forth by Ms. Torno, she seeks to certify a class of homeowners that received a notice
8 of default with an affidavit of authority identifying Green Tree as having authority to exercise the
9 power of sale even though Green Tree had executed an assignment of the deed of trust to a third
10 party prior to Defendants' recording the notice of default.  While Defendants contend such
11 assignments were not effective until recorded, Ms. Torno contends (and this Court preliminarily
12 agreed)[3] that such assignments are effective between Green Tree and the third party upon execution.
13 Thus, under such circumstances, an affidavit of authority identifying Green Tree as the having
14 authority to exercise the power of sale is false because, as a result of the assignment, Green Tree
15 lacked such authority.

16     As detailed below, the class definitions proposed by Ms. Torno are ascertainable, Ms. Torno
17 is an adequate class representative, the proposed classes present common issues of law and fact, and
18 a class action is superior to individual litigation.  Accordingly, Defendants' Motion to Strike should
19 be denied.

20     **II.**    **STATEMENT OF FACTS**

21     **A.**    **The Parties.**

22     Ms. Torno is a resident and citizen of Clark County, Nevada.  (ECF No. 74-2, Proposed
23 Third Am. Compl. ["TAC"] ¶ 1.)  Green Tree is a Delaware limited liability company with its
24 principal place of business in Ramsey County, Minnesota.  (*Id.* ¶¶ 2-4.)  National Default is an

---

[2] *See* ECF No. 74, Plaintiff Crystal Torno's Motion for Leave to File Third Amended Complaint, Oct. 21, 2016; ECF No. 74-2, Proposed Third Amended Compl., Oct. 21, 2016.

[3] ECF No. 60-1, Transcript of April 20, 2016 Hearing on Defendants' Motion for Judgement on the Pleadings ["MJOP Hearing Transcript"], at 5:22 – 6:1.

Arizona corporation, with its principal place of business located in Phoenix, Arizona. (*Id.* ¶¶ 5-7.) Fannie Mae is a government sponsored entity (GSE) that does business in the State of Nevada, with its principal place of business located in Washington, D.C. (*Id.* ¶¶ 8-9.)

### B. Ms. Torno Purchases the Home.

In 2005, Ms. Torno purchased the property at issue, which is located at 1365 Torington Drive, Las Vegas, Nevada 89108 (the "Home"), as her primary residence. (*Id.* ¶ 12.) Ms. Torno financed her purchase of the Home by a loan, evidenced by a promissory note (the "Note") and secured by a deed of trust (the "Deed of Trust") (jointly, the "Loan") through Republic Mortgage, LLC. (*Id.* ¶ 13.) Sometime thereafter, Green Tree became the servicer of the Loan. (*Id.* ¶ 14.)

On or about July 11, 2012, Mortgage Electronic Registration Systems, Inc. executed a Corporate Assignment of Deed of Trust, purportedly assigning the Deed of Trust to Green Tree (the "2012 Assignment"). (*Id.* ¶ 15; ECF No. 23-3, Corporate Assignment of Deed of Trust.)

### C. Green Tree Assigns the Deed of Trust to Fannie Mae.

On or about January 8, 2013, Green Tree executed a Corporate Assignment of Deed of Trust, assigning the Deed of Trust to Fannie Mae (the "Fannie Mae Assignment"). (*Id.* ¶ 16; ECF No. 23-7, Corporation Assignment of Deed of Trust ["Fannie Mae Assignment"].)

### D. The Notice of Default.

On January 22, 2013, National Default filed a Notice of Default and Election to Sell (the "Notice of Default"). (*See generally* ECF No. 23-2, Notice of Default.) Pursuant to the requirements of NRS 107.080(2), attached to the Notice of Default was an Affidavit of Authority in Support of Notice of Default and Election to Sell executed by Ruth Hernandez, Assistant Vice President of Green Tree (the "Hernandez Affidavit"). (*Id.* at 3-6.)[4] The Hernandez Affidavit misrepresented that Green Tree had the authority to exercise the power of sale. (*Id.* at 3-4.) The Hernandez Affidavit also failed to identify Fannie Mae as a "known prior beneficiar[y] (whether of record or not) . . . ." (*Id.* at 4.)

---

[4] Citations to page numbers for documents filed on the Court's Case Management/Electronic Case Files system ("ECF") are citations to the page numbers assigned by the ECF system (i.e. the page numbers in the upper-right hand corner of the filed document).

**E.**     **Ms. Torno and Green Tree Attend Mediation.**

Ms. Torno applied to the Nevada Foreclosure Mediation Program (the "FMP") pursuant to NRS 107.086.  (ECF No. 74-2, TAC ¶ 22.)  On May 24, 2013, a mediation was conducted pursuant to the FMP (the "Mediation").  (*Id.* ¶ 23.)  Ms. Torno and a representative of Green Tree were physically present at the Mediation.  (*Id.* ¶ 24.)  Green Tree continued to represent that it had the authority to exercise the power of sale.  (*Id.* ¶ 26.)  Fannie Mae did not have a representative present at the Mediation.  (*Id.* ¶ 25.)

At the Mediation, Ms. Torno and Green Tree entered into a Mediation Statement and Agreement (the "Agreement").  (*Id.* ¶ 27; ECF No. 23-11, Complaint, Sept. 23, 2013 ["Initial Compl."], at 19-28.)  Pursuant to the Agreement, in consideration for Ms. Torno listing the Home and obtaining an offer of at least one hundred thousand dollars ($100,000), Green Tree agreed to short-sale the home and to waive any potential deficiency that Ms. Torno might face.  (ECF No. 74-2 ¶ 29.)

**F.**     **Ms. Torno Performs her End of the Bargain; Green Tree Confesses that it is Not the Actual Beneficiary of the Loan.**

Pursuant to the Agreement, Ms. Torno obtained a bona fide offer of one hundred thousand dollars ($100,000) on the Home.  (*Id.* ¶ 29.)  Ms. Torno submitted the offer to Green Tree.  (*Id.* ¶ 31.)  In response to the submission of the offer, Green Tree finally confessed to Ms. Torno that it needed to obtain approval from an investor (Fannie Mae).  (*Id.* ¶ 32.)  Further, Green Tree notified Ms. Torno that the investor (Fannie Mae) would neither comply with the Agreement nor accept the $100,000 offer.  (*Id.* ¶ 33.)

**G.**     **Fannie Mae (not Green Tree) Successfully Credit Bids at the Trustee's Sale on January 28, 2014; Fannie Mae (not Green Tree) is Identified as the Beneficiary of the Torno Deed of Trust.**

A public auction of the Home was conducted by National Default on January 28, 2014 (the "Trustee's Sale").  (*Id.* ¶ 34; ECF No. 23-8, Trustee's Deed Upon Sale, at 2.)  At the Trustee's Sale, Fannie Mae—not Green Tree—made a credit bid of $174,877.62, which was the highest bid.  (ECF No. 74-2, TAC ¶ 36; ECF No. 23-8, Trustee's Deed Upon Sale, at 2.)  At the time of the Trustee's

1  Sale, *the Fannie Mae Assignment had not been recorded*.  (ECF No. 74-2, TAC ¶ 36; *compare*
2  ECF No. 23-8, Trustee's Deed Upon Sale, at 2 (stating trustee's sale occurred on *January 28*, 2014)
3  *with* ECF No. 23-7, Fannie Mae Assignment (recorded on *February 5*, 2014).)

        **H.**        <u>**The Fannie Mae Assignment is Recorded on February 5, 2014.**</u>

5  Fannie Mae recorded the Fannie Mae Assignment on February 5, 2014.  (ECF No. 74-2,
6  TAC ¶ 39.)  Thus, *prior to* recording the Fannie Mae Assignment, Fannie Mae made a credit bid, as
7  the beneficiary, at the Trustee's Sale—demonstrating it treated the Fannie Mae Assignment as
8  effective prior to its recordation.  (ECF No. 23-8, Trustee's Deed Upon Sale, at 2.)

        **J.**        <u>**Procedural History.**</u>

10  On June 2, 2015, Green Tree removed the District Court Case No. A-13-689111-C to United
11  States District Court, District of Nevada.  (ECF. No. 1, Notice of Removal by Defendant Green Tree
12  Servicing, LLC Pursuant to 28 U.S.C. §§1332(d)(2), June 2, 2015.)

13  On August 3, 2015, the parties held a conference in accordance with Rule 26(f) and Local
14  Rule 26-1(d).  The parties were unable to agree on a Discovery Plan and filed separate proposed
15  discovery plans.  (*See* ECF No. 14, [Proposed] Discovery Plan and Scheduling Order, Sept. 28,
16  2015; ECF No. 15, [Proposed] Discovery Plan and Scheduling Order, Sept. 30, 2015.)  In their
17  proposed Discovery Plan and Scheduling Order, the Defendants proposed that discovery be
18  bifurcated into two phases: (1) merits discovery; and then (2) class discovery.  Plaintiff disagreed
19  with the bifurcation of discovery.  (*See* ECF No. 15, [Proposed] Discovery Plan and Scheduling
20  Order, Sept. 30, 2015.)

21  On October 20, 2015, Magistrate Judge Peggy A. Leen held a Scheduling Conference and
22  determined that discovery would not be bifurcated.  (*See* ECF No. 18, Minutes of Proceeding, Oct.
23  20, 2015.)  However, Judge Leen ordered the parties to attend a Status/Dispute Conference on
24  December 15, 2015, at 9:30 a.m. (the "Discovery Dispute Conference").  (*See id.*)  Prior to the
25  Discovery Dispute Conference, the parties were to propound written discovery requests, respond to
26  the written discovery requests, and then conduct a meet-and-confer in an attempt to resolve any
27  outstanding discovery disputes.  (*See id.*)  On October 22, 2015 Ms. Torno served written discovery
28  requests on the Defendants.

On November, 6, 2015, before answering Plaintiff's discovery requests, the Defendants filed a Motion to Dissolve the Injunction (ECF No. 20) and a Motion for Judgment on the Pleadings (ECF No. 21). Then on, December 4, 2016, the Defendants filed a Motion to Stay Discovery ("Motion to Stay"). (ECF. No. 33, Motion to Stay Discovery, Dec. 4, 2015.) Magistrate Judge Peggy A. Leen granted Defendants' Motion to Stay until this Court ruled on the Motion for Judgment on the Pleadings. (ECF No. 49, Minutes of Proceedings, Jan. 14, 2016.)

On April 20, 2016, this Court denied Defendants' Motion for Judgment on the Pleadings, making a preliminary finding that if Green Tree assigned the deed of trust—via the Fannie Mae Assignment—prior to recording the notice of default, a violation of NRS 107.080(2) likely occurred as "Green Tree did not have the authority to sell." (ECF No. 57, Minutes of Proceedings, Apr. 20, 2016; ECF No. 60-1, Transcript of April 20, 2016 Hearing on Defendants' Motion for Judgment on the Pleadings ["MJOP Hearing Transcript"], at 5:22 – 6:1.) Therefore, on June 15, 2016, Judge Leen lifted the Stay of Proceedings and set a status check hearing on July 28, 2016. (ECF No. 59, Order, June 16, 2016.)

At the July 28, 2016 status conference, Judge Leen—treating Plaintiff's Status Report as a Motion to Compel—Ordered Green Tree to "produce 50 random loan files available in which Green Tree was the servicer of the note, executed the affidavit of authority, and attached the notice of default identifying Green Tree as the beneficiary." (ECF No. 69, Minutes of Proceedings, July 28, 2016.) On October 3, 2016, Green Tree provided Ms. Torno with 50 incomplete loan files. (ECF No. 74-3, Email from Michael Hogue, Esq., Oct. 21, 2016 to Paul C. Williams, Esq., at 2.) Green Tree admitted that it had not provided the full loan files to Ms. Torno, contending that it did not believe it was required to do so—despite the plain language of Judge Leen's Order. (*Id.*) In an effort to resolve the matter without Court intervention, Ms. Torno offered to accept all notices of default and assignments of deed of trust in the 50 loan files in lieu of the loan files in their entirety. (*Id.* at 2-3.) Green Tree has not responded to Ms. Torno's offer. (*Id.* at 1.)[5]

---

[5]  Green Tree's failure to comply with the Court's order will be addressed in a separate motion.

**K.     The New Class Definitions.**

In her proposed Third Amended Complaint, Ms. Torno seeks to revise the class definitions as follows:

> All present and former grantors of deeds of trust or persons who hold or held the title of record of real property in Nevada, who held such interests in the real property, where, from October 1, 2011 to the present: (1) Green Tree executed and/or caused to be recorded a notice of default which contained an affidavit of authority listing Green Tree as the current holder of the note secured by the deed of trust and as the current beneficiary of record; and (2) Green Tree, prior to the recordation of the notice of default, executed an assignment of the deed of trust to a third party; and (3) the real property is not currently subject to a pending trustee's sale based on the notice of default.
>
> Collectively, all these persons will be referred to as the "Green Tree Class Members." The Green Tree Class Representative represents, and is a member of, the Green Tree Class.
>
> Excluded from the Green Tree Class are Green Tree and any entities in which Green Tree has a controlling interest, Green Tree's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury and/or emotional distress.

(ECF No. 74-2, TAC ¶ 40.) The National Default Class and the Fannie Mae Class are similarly revised. (*See* TAC ¶¶ 49, 59.)

### III.     ARGUMENT

**A.     Standard of Decision.**

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). "Motions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *See John v. Mazo*, No. 2:16-cv-00239-APG-PAL, 2016 WL 4497755, at *1 (D. Nev. Aug. 25, 2016). "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *Id.*

Further, under Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D), the Court may "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be

maintained." *Id.* at *2 (citing *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010)). "However, motions to strike are ***generally disfavored*** because a motion for class certification is considered to be a more appropriate vehicle for arguments pertaining to the class allegations." *Id.* (emphasis added) (citing *Thorpe v. Abbott Lob., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008)).

### B. The Proposed Class is Ascertainable.

"To obtain class certification, the plaintiff must prove the threshold requirement of ascertainability—that the proposed class's membership can be determined by objective criteria." *Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) (citing *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n.3 (9th Cir. 2014)). The proposed class definitions should describe "a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description" and should not require individualized inquiries to prospective class members. *Id.* (internal quotation marks omitted). The class definition may not be based on the merits of individuals' claims; in other words, "[t]he inquiry into class membership must not require holding countless hearings resembling 'mini-trials.'" *Id.*

Here, "objective criteria determine who are class members . . . ." *See id.* Specifically, the proposed class members are homeowners who received, via recordation, a notice of default containing an affidavit of authority representing that Green Tree had the authority to exercise the power of sale even though Green Tree had executed an assignment of the deed of trust to a third party (such as Fannie Mae) prior to Defendants recording the notice of default. Green Tree's records can be used to identify the class members based on a simple review of the recorded notices of default and any assignments to third parties (such as Fannie Mae). Further, class members can readily identify themselves as class members based on their current or prior ownership of their homes. Individual mini-trials will not be necessary to determine who received a notice of default with an affidavit of authority representing that Green Tree as having the authority to exercise the power of sale nor whether Green Tree had previously executed an assignment of the deed of trust to a third party prior to recording the notice of default.

Defendants contend that the proposed classes are not ascertainable because: (1) some members may lack Article III standing; (2) the proposed classes include homeowners whose claims

1 would be different from, or inconsistent with, Ms. Torno's claims; and (3) the proposed classes are
2 not based on subject criteria for identifying which class members have standing to assert the claims
3 alleged by Ms. Torno. These arguments fail and, in any event, are cured by the class definitions
4 contained in the proposed Third Amended Complaint. (*See* ECF No. 74-2, TAC ¶¶ 40, 49, 59.)

5 First, Ms. Torno and the proposed class members have Article III standing. Intangible
6 injuries are sufficient to confer Article III standing and "***the risk of real harm*** can[] satisfy the
7 requirement of concreteness." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis
8 added), *as revised* (May 24, 2016). As explained by the United States Supreme Court:

> For example, the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure. . . . Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified.

13 *Id.* Here, in enacting NRS 107.080, the Nevada legislature recognized that there was a real risk of
14 harm to a homeowner if someone falsely represented in an affidavit of authority that they had
15 authority to exercise the power of sale—that party might improperly exercise the power of sale and
16 the homeowner would be misled as to the party with whom they could negotiate and/or mediate. *Cf.*
17 *Leyva v. Nat'l Default Servicing Corp.*, 255 P.3d 1275, 1279 (Nev. 2011) (noting that the legislative
18 intent of NRS 107.086(4) "is to ensure that whoever is foreclosing '***actually owns the note*** *and has*
19 ***authority to modify the loan***.") (emphasis added) (quoting Hearing on A.B. 149 Before the Joint
20 Comm. on Commerce and Labor, 75th Leg. (Nev., Feb. 11, 2009) (testimony of Assemblywoman
21 Barbara Buckley)); *Einhorn v. BAC Home Loans Servicing, LP*, 290 P.3d 249, 254 (Nev. 2012).
22 Thus, the violation of a procedural right granted by NRS 107.080 is sufficient to constitute an injury
23 in fact and, as a result, Ms. Torno and the proposed class members have Article III standing. *See*
24 *Spokeo, Inc.*, 136 S. Ct. at 1549.

25 Second, the proposed class members have the same claims. Specifically, the basis of Ms.
26 Torno's and the proposed classes' claims is that Defendants violated 107.080(2) because they caused
27 notices of default to be recorded that contained an affidavit of authority identifying Green Tree as
28 having the authority to exercise the power of sale when, in reality, Green Tree had no such authority

1  because it had executed an assignment to a third party prior to recording the notice of default.  That
2  Green Tree disputes the merits of this claim, by incorrectly arguing unrecorded assignments are
3  ineffective, is immaterial to whether class certification is appropriate.

4  Third, the criteria for class membership is objectively based upon Green Tree having been
5  identified as having the authority to exercise the power of sale and Green Tree having assigned any
6  interest it might have had in the deed of trust to a third party prior to recording the notice of default.

7  In sum, the proposed classes are ascertainable as their "membership can be determined by
8  objective criteria" and will not require individualized inquiries to prospective class members.
9  *Kristensen*, 12 F. Supp. 3d at 1303.

### C.     Ms. Torno is an Adequate Class Representative.

11  Courts analyze two criteria in determining the adequacy of representation: "(1) the proposed
12  representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs
13  are represented by qualified and competent counsel." *Hester v. Vision Airlines, Inc.*, No. 209-CV-
14  00117-RLH-RJJ, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009) (internal quotation marks
15  omitted), *aff'd,* 687 F.3d 1162 (9th Cir. 2012).

16  Defendants contend that Ms. Torno is not an adequate class representative because: (1) Ms.
17  Torno seeks to represent both injured and uninjured individuals members; (2) Ms. Torno has opted
18  to pursue certain claims on a class-wide basis while jeopardizing class members' ability to pursue
19  other claims subsequently; and (3) Ms. Torno cannot seek injunctive relief.  These arguments fail.

20  First, to the extent Ms. Torno's prior class definition in the Second Amended Complaint
21  included uninjured individuals, that issue has been rectified by the class definitions in the proposed
22  Third Amended Complaint.  Under the new class definitions, the proposed classes are only
23  comprised of instances where Green Tree executed an assignment of the deed of trust prior to
24  recording the notice of default.  (*See* ECF No. 74-2, TAC ¶¶ 40, 49, 59.)

25  Second, Defendants' contention that a conflict exists because Ms. Torno is seeking statutory
26  damages as opposed to other forms of relief is purely speculative and the "denial of class
27  certification on the basis of speculative conflicts" is disfavored.  *See In re Online DVD-Rental*
28  *Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (internal quotation marks omitted).  Moreover,

Defendants incorrectly assess the state of the law—courts generally allow a class representative to pursue statutory damages over actual damages as those class members with large actual damage claims may opt out:

> Another variation on the same issue occurs when the statute that forms the basis for the class's claims provides for a small amount of statutory damages or, in the alternative, actual damages suffered by the plaintiff. . . .  In this situation, courts generally allow the class representative to pursue only statutory damage claims, and to deliberately eschew actual damage claims, without jeopardizing a finding of adequacy even if pursuing actual damage claims might be to the advantage of some class members.  The rationale is twofold: first, because these actions are normally certified under Rule 23(b)(3), the rights of absent class members will be protected because those with large actual damage claims may opt-out and pursue their claims individually; second, courts recognize that a contrary rule would make class certification virtually impossible in any case with statutory damages, which would undercut the very purpose of statutory damages.

Newberg on Class Actions § 3:59 (5th ed.) (footnotes omitted); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification."); *see also Ashby v. Farmers Ins. Co. of Oregon*, CV 01-1446-BR, 2004 WL 2359968, at *6 (D. Or. Oct. 18, 2004).

Third, Defendants' contentions regarding Ms. Torno's purported inability to seek injunctive relief are moot.  Ms. Torno's new class definitions exclude individuals that are still subject to a trustee's sale (based on the applicable notice of default), making injunctive relief irrelevant—neither Ms. Torno nor the proposed classes will be seeking an injunction in this matter.  (*See* ECF No. 74-2, TAC ¶¶ 40, 49, 59.)

Accordingly, Ms. Torno is an adequate class representative because she does "not have conflicts of interest with the proposed class . . . ."   *See Hester*, No. 209-CV-00117-RLH-RJJ, 2009 WL 4893185, at *5.

### D. There are Common Issues of Fact and Common Issues of Law.

The commonality prerequisite requires that "there are questions of law or fact common to the class[.]"  Fed. R. Civ. P. 23(a)(2).  A plaintiff's "claims must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "Commonality focuses on the relationship of common facts and legal issues among class members."  *Kanawi v. Bechtel Corp.,* 254 F.R.D. 102, 107 (N.D. Cal. 2008).  The commonality prerequisite is "***construed permissively*** and not all questions of fact and law need to be common to satisfy this rule."  *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (emphasis added).  In other words, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."  *Id.* at 978-79.  "Thus, for purposes of Rule 23(a)(2), a perfect identity of facts and law is not required; relatively 'minimal' commonality will do."  *Otomo*, 2013 WL 1249598, at *2 (citation omitted).

Here, there are common issues of law and fact.  Primarily, this matter turns upon the effect of Green Tree's execution of assignments of deeds of trust to third parties prior to Defendants' recording notices of default with affidavits of authority representing that Green Tree had the authority to exercise the power of sale.  Defendants contend that such assignments are not effective until recorded.  Ms. Torno contends—and this Court preliminarily agreed—that such assignments are effective between Green Tree and the third party upon execution.  Regardless of the Parties' positions, determining the "truth or falsity" of this issue "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.

Accordingly, because "there are questions of law or fact common to the class[es]," the commonality threshold is satisfied.  *See* Fed. R. Civ. P. 23(a)(2).

### E.     A Class Action is Superior to Individual Litigation.

"The focus of superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."  *Manno,* 289 F.R.D. at 690 (citation and internal quotation marks omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation.").  "In determining superiority, courts must consider the four factors of Rule 23(b)(3)."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001), *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001).  The four factors are: "(A) the class members'

1  interests in individually controlling the prosecution or defense of separate actions; (B) the extent and
2  nature of any litigation concerning the controversy already begun by or against class members; (C)
3  the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
4  and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  "A
5  consideration of these factors requires the court to focus on the efficiency and economy elements of
6  the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most
7  profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (citation and internal quotation marks
8  omitted).

9       Each of the four superiority factors weighs in favor of class certification.  First, where
10 "damages suffered by each putative class member are not large, [the first] factor weighs in favor of
11 certifying a class action." *Id.*  Here, the relatively small amount of damages at stake in a 107.080
12 action favors class certification. *See Kristensen*, 12 F. Supp. 3d at 1308 ("The $500 damage amount
13 for each [TCPA] violation, even if increased to $1,500 for willful violations [of the TCPA], is
14 insufficient to incentivize individual actions.").  Moreover, there is no evidence to suggest that any
15 proposed class members suffered actual damages in excess of $5,000—only the unsupported
16 speculation of Defendants.

17      Second, when the court is unaware of any other pending litigation, class certification is
18 favored. *Id.*; *see also Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 571 (W.D. Wash. 2012).
19 Because there appear to be no similar lawsuits, class resolution is a superior method of adjudicating
20 the instant claims. *See Kristensen*, 12 F. Supp. 3d at 1308; *Agne*, 286 F.R.D. at 571.

21      Third, Nevada is the most desirable forum in which to concentrate litigation as all of the
22 homes at issue are in Nevada and the vast majority of class members are likely Nevada residents.
23 *See* Fed. R. Civ. P. 23(b)(3)(C).

24      Fourth, there are no factors that would make managing this class difficult.  The proposed
25 class members are easily identifiable based on Defendants' own records. *See* Fed. R. Civ. P.
26 23(b)(3)(D).  Moreover, resolving the issue of whether the affidavits of authority at issue were false
27 based on Green Tree's assignment of the deeds of trust is a common issue that will not require the
28 Court to conduct any mini-trials—it is the same legal issue for all proposed class members. *See id.*

1 In sum, a consideration of the efficiencies and economies of a class action in this matter supports a finding in favor of class certification. *See Zinser*, 253 F.3d at 1190.

### IV. CONCLUSION

The issues presented by Defendants are not only wrong, but also better addressed on a motion for class certification as opposed to a motion to strike. *See John*, No. 2:16-cv-00239-APG-PAL, 2016 WL 4497755, at *1 (holding motions to strike class allegations "are generally disfavored because a motion for class certification is considered to be a more appropriate vehicle for arguments pertaining to the class allegations."). Regardless, the issues raised by Defendants in the Motion to Strike are entirely cured by Ms. Torno's proposed Third Amended Complaint and are therefore moot. (*See* ECF No. 74-2, TAC ¶¶ 40, 49, 59.) The class definitions proposed by Ms. Torno are ascertainable, Ms. Torno is an adequate class representative, the proposed classes present common issues of law and fact, and a class action is superior to individual litigation. Accordingly, Defendants' Motion to Strike and National Default Servicing Corporation's Joinder thereto should be denied.

DATED this 21st day of October, 2016.

BAILEY✜KENNEDY

By: /s/ Paul C. Williams
    DENNIS L. KENNEDY
    JOSHUA M. DICKEY
    PAUL C. WILLIAMS
    AMANDA L. STEVENS

    GEORGE H. HAINES
    DAVID H. KRIEGER
    HAINES & KRIEGER
    8985 South Eastern Avenue, Suite 130
    Las Vegas, Nevada 89123
    Phone: (702) 880-5554
    Fax: (702) 385-5518
    GHaines@hainesandkrieger.com
    DKrieger@hainesandkrieger.com
    *Attorneys for Plaintiff Crystal Torno*

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |

I certify that I am an employee of BAILEY❖KENNEDY and that on the 21st day of October, 2016, service of the foregoing Plaintiff Crystal Torno's Response to Defendants Green Tree Servicing, LLC's and Fannie Mae's Motion to Strike Class Allegations and National Default Servicing Corporation's Joinder Thereto [ECF Nos. 70, 71] was made by mandatory electronic service through the United States District Court's electronic filing system and/or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

| | |
|---|---|
| MARK E. FERRARIO, ESQ.<br>JACOB D. BUNDICK, ESQ.,<br>TAMI D. COWDEN, ESQ.<br>**GREENBERG TRAURIG, LLP**<br>3773 Howard Hughes Parkway<br>Suite 400 North<br>Las Vegas, NV 89169 | Email:  ferrariom@gtlaw.com<br>            bundickj@gtlaw.com<br>            cowdent@gtlaw.com<br><br>*Attorneys for Defendants*<br>GREEN TREE SERVICING LLC<br>and FANNIE MAE |
| JENNIFER L. GRAY, ESQ.<br>**c/o GREENBERG TRAURIG, LLP**<br>3773 Howard Hughes Parkway<br>Suite 400 North<br>Las Vegas, NV 89169 | Email:  grayjen@gtlaw.com<br><br>*Attorneys for Defendants*<br>GREEN TREE SERVICING LLC<br>and FANNIE MAE |
| GREGORY L. WILDE, ESQ.<br>KEVIN SODERSTROM, ESQ.,<br>MATTHEW D. DAYTON, ESQ.<br>**TIFFANY & BOSCO, P.A.**<br>212 South Jones Blvd.<br>Las Vegas, NV 89107 | Email:  efilenv@tblaw.com<br>            kss@tblaw.com<br>            md@tblaw.com<br><br>*Attorneys for Defendant*<br>NATIONAL DEFAULT<br>SERVICING CORPORATION |

                                   /s/ Sharon Murnane
                            Employee of BAILEY❖KENNEDY

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820